# United States Court of Appeals for the Federal Circuit

———————————

**JEREMY BEAUDETTE, MAYA BEAUDETTE,**
*Claimants-Appellees*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

———————————

2022-1264

———————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-4961, Judge Joseph L. Falvey, Jr, Judge Joseph L. Toth, Judge Michael P. Allen.

———————————

Decided: February 27, 2024

———————————

IGOR VICTOR TIMOFEYEV, Paul Hastings LLP, Washington, DC, argued for claimants-appellees. Also represented by RENEE A. BURBANK, BARTON FRANK STICHMAN, I, National Veterans Legal Services Program, Arlington, VA; MICHAEL J. FISHER, Miller Barondess, LLP, Los Angeles, CA.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M.

MCCARTHY; JANE ROTHSTEIN, BRYAN THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

MORGAN MACISAAC-BYKOWSKI, Veterans Law Institute, Stetson University College of Law, Gulfport, FL, for amicus curiae National Law School Veterans Clinic Consortium.

ALEC UMBERTO GHEZZI, Veterans' Voice of America, Silver Spring, MD, for amicus curiae Vietnam Veterans of America.

_____

Before MOORE, *Chief Judge*, DYK and STOLL, *Circuit Judges*.

MOORE, *Chief Judge*.

The Secretary of Veterans Affairs (Secretary) appeals from a decision of the United States Court of Appeals for Veterans Claims (Veterans Court) granting a petition for a writ of mandamus permitting the Board of Veterans' Appeals (Board) to hear appeals of adverse decisions rendered under the Program of Comprehensive Assistance for Family Caregivers (Caregiver Program). For the following reasons, we affirm.

BACKGROUND

A. History of the Caregiver Program

In 2010, Congress established the Caregiver Program to provide assistance to caregivers of seriously injured combat veterans. Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, Title I, 124 Stat. 1130, 1132–40 (2010) (codified principally at 38 U.S.C. § 1720G) (Caregiver Act). The Caregiver Program provides family caregivers benefits such as medical care, training, support, counseling, mental health services, and a monthly

stipend.  38 U.S.C. § 1720G(a)(3)(A).  To qualify, the veteran must require personal care services because of "an inability to perform one or more activities of daily living" or a need for supervision, protection, or extensive instruction due to the nature of the injuries.  38 U.S.C. § 1720G(a)(2)(C).  An eligible veteran and family caregiver seeking to participate in this program must jointly submit an application to the Secretary.  38 U.S.C. § 1720G(a)(4).  After initial approval, the veteran's and family caregiver's eligibility are generally reassessed on an annual basis.  38 C.F.R. § 71.30.

In 2015, the Department of Veterans Affairs (VA) promulgated a final rule implementing the Caregiver Act.  Caregivers Program, 80 Fed. Reg. 1357 (Jan. 9, 2015).  The VA explained that all decisions under the Caregiver Act are medical determinations that are not subject to the jurisdiction of the Board.  *Id.* at 1366.  The VA noted the statute at 38 U.S.C. § 1720G(c)(1), titled "Construction," states: "A decision by the Secretary under this section affecting the furnishing of assistance or support shall be considered a medical determination."  *Id.*  The VA explained "medical determinations are not subject to the jurisdiction of the Board of Veterans' Appeals under 38 U.S.C. 7104, or pursuant to our implementing regulation."  *Id.*  The VA reasoned that a longstanding regulation restricted the Board's review of medical determinations.  *See* 38 C.F.R. § 20.101(b) (1992) ("Medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual, are not adjudicative matters and are beyond the Board's jurisdiction.").  Under the VA's interpretation, the Caregiver Act deemed all decisions medical determinations, and thus such decisions "may not be adjudicated in the standard manner as claims associated with veterans' benefits."  Caregivers Program, 80 Fed. Reg.  at 1366.

### B.  Procedural History

Jeremy Beaudette served in the Marine Corps from 2002 to 2012, including five combat tours in Iraq and Afghanistan.  Mr. Beaudette suffered multiple concussions, resulting in traumatic brain injury and rendering him legally blind.  He was medically discharged, and the VA rated him 100% disabled.

Mr. Beaudette and his wife Maya Beaudette (collectively, the Beaudettes) applied for Caregiver Program benefits in March 2013.  The VA found them eligible based on Mr. Beaudette's inability to perform activities of daily living and his substantial need for supervision and protection.  The Beaudettes remained in the Caregiver Program for over four years and the VA consistently found them eligible during its annual reassessments.  In October 2017, the VA initiated its regular reassessment of Mr. Beaudette.  Due to Mr. Beaudette's ongoing recovery from major surgeries, the Beaudettes requested a delay in the reassessment until he could physically participate.  The VA denied the request and proceeded to reassess his status based solely on his medical records.

In February 2018, the VA notified the Beaudettes they were no longer eligible for Caregiver Program benefits.  The Beaudettes appealed the VA's decision through the VA Clinical Appeals process.  *See* Caregiver Program, 80 Fed. Reg. at 1366; *see also* VHA Directive 1041 (Oct. 24, 2016) (J.A. 23–33).  They first appealed to the VA Southern Nevada Healthcare System (SNHS), the first-level reviewer, which affirmed the VA's decision.  The Beaudettes appealed the SNHS decision to the second-level reviewer, the Director of the Sierra Pacific Veterans Integrated Service Network (VISN), which affirmed.  The decision was considered final and could not be appealed.

The Beaudettes sought to appeal the final adverse decision by filing a Notice of Disagreement with the Board in August 2019.  The Board issued no decision in response,

nor did the Board dismiss the Notice of Disagreement for lack of jurisdiction.  Nearly a year later in July 2020, the Beaudettes filed a petition for a writ of mandamus with the Veterans Court pursuant to 28 U.S.C. § 1651.  The petition sought an order to permit Board review of adverse Caregiver Program decisions and sought to certify a class of similarly situated veterans and caregivers.

In April 2021, a majority of a three-judge panel granted the Beaudettes' petition and certified the request for a class.  *Beaudette v. McDonough*, 34 Vet. App. 95, 99 (2021).[1]  The majority held Congress mandated Board review of all Caregiver Program decisions.  *Id.* at 105 (citing 38 U.S.C. § 7104(a)).  The majority disagreed with the Secretary's position that the phrase "medical determination" in § 1720G(c)(1) is a direct reference to a longstanding VA rule, 38 C.F.R. § 20.104(b), excluding medical determinations from Board review.  *Id.* at 101 (citing 38 U.S.C. §§ 511(a), 7252(a)), 103.  Under the canons of statutory construction, the majority concluded the Secretary did not meet his burden to overcome the strong presumption favoring judicial review of administrative action.  *Id.* at 102–03.  The majority declined to provide a definitive interpretation of § 1720G(c)(1).  *Id.* at 105.

---

[1]    The Veterans Court ordered the Secretary to notify claimants of their right to appeal adverse Caregiver Program determinations to the Board.  *Beaudette*, 34 Vet. App. at 99.  The Secretary did not request a stay of the order.  J.A. 1368–73; Appellee's Response Br. at 15.  The VA issued over 400,000 notices of potential appeal rights to all veterans and caregivers who ever received a Caregiver Program decision.  *See* Joint Letter in Response to Court's Order, Dkt. No. 75 at 2.  As of December 11, 2023, the Board had issued over 1,000 decisions on appeals of Caregiver Program decisions.  *Id.* at 3.

Judge Falvey dissented because he believed the term "medical determination" in § 1720G(c)(1) refers to the longstanding VA rule, which was in existence before Congress passed the Caregiver Act. *Id.* at 109 (Falvey, J., dissenting). He concluded the Secretary's interpretation of § 1720G precluding Board review "is the only interpretation that gives effect to all of the statute's provisions and presumes that Congress understands the implications of its words." *Id.*

The Secretary appeals.[2] We have jurisdiction under 38 U.S.C. § 7292(a), (c).

DISCUSSION

I

In reviewing Veterans Court decisions, we "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). We have "jurisdiction to review the [Veterans Court's] decision whether to grant a mandamus petition that raises a non-frivolous legal question," and to determine "whether the petitioner has satisfied the legal standard for issuing the writ." *Beasley v. Shinseki*, 709 F.3d 1154, 1158 (Fed. Cir. 2013). We review the Veterans Court's legal interpretations de novo. *Monk v. Shulkin*, 855 F.3d 1312, 1316 (Fed. Cir. 2017).

The All Writs Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. To obtain a writ of mandamus, the petitioner must show: (1) a "clear and indisputable" right to the relief; (2) no adequate

---

[2]    The Secretary does not appeal the Veterans Court's class certification decision. Appellant's Opening Br. at 16 n.7.

alternative means to obtain the relief requested; and (3) the writ is appropriate under the circumstances. *Wolfe v. McDonough*, 28 F.4th 1348, 1354 (Fed. Cir. 2022) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004)). The Secretary challenges the issuance of the writ.

## II

We consider whether the Beaudettes have a "clear and indisputable" right to Board review under the correct interpretation of 38 U.S.C. § 1720G(c)(1). The statute states: "A decision by the Secretary under this section affecting the furnishing of assistance or support shall be considered a medical determination." 38 U.S.C. § 1720G(c)(1). The Beaudettes' right depends on whether the term "medical determination" precludes Board (and judicial) review of all Caregiver Program decisions. For the reasons set forth below, we hold § 1720G(c)(1) only bars judicial review of Caregiver Program decisions on the furnishing of assistance or support.

There is a "strong presumption" favoring judicial review of agency actions. *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)). This rebuttable presumption is overcome if the "statute's language or structure demonstrates that Congress wanted an agency to police its own conduct." *Id.* The party seeking to rebut the presumption, here the Secretary, "bears a 'heavy burden' of showing that the statute's 'language or structure' forecloses judicial review." *Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 197 (2021) (quoting *Mach Mining*, 575 U.S. at 486). The Secretary has not met its burden to show *all* Caregiver Program decisions are exempt from judicial review.

Historically, there was no judicial review of VA benefits decisions. *See, e.g.*, Act of March 20, 1933, ch. 3 § 5, 48 Stat. 9 (1933) ("All decisions rendered by the Administrator of Veterans' Affairs . . . shall be final and conclusive on all

questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."); 38 U.S.C. § 211(a) (1958) ("[T]he decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision."). This exclusion remained in place for decades.

In 1988, Congress, for the first time, established a pathway for judicial review for certain benefits decisions when it passed the Veterans' Judicial Review Act of 1988 (VJRA). Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988). The VJRA accomplished this by amending § 211(a) to create exceptions to the general prohibition to judicial review. *See* 38 U.S.C. § 211(a) (1988); 38 U.S.C. § 511 (2012); *Bates v. Nicholson*, 398 F.3d 1355, 1362–64 (Fed. Cir. 2005) (explaining the history of § 511, including its predecessor § 211(a)). Specifically, all "matters covered by chapter 72 of this title" were now subject to judicial review. 38 U.S.C. § 211(a)(2)(D) (1988) (exempting certain matters from the general prohibition of judicial review); *see* VJRA § 101. The VJRA also established that the newly created Veterans Court has jurisdiction over all Board decisions that are eligible for judicial review. VJRA § 301 (creating 38 U.S.C. § 4052, renumbered to current § 7252, to establish jurisdiction). Under the VJRA, the Board continued to have jurisdiction over "[a]ll questions in a matter which under section 511(a) of this title is subject to decision by the Secretary." 38 U.S.C. § 7104(a).

In view of this history, Congress knew how to limit judicial review, including the jurisdiction of the Board, when it passed the Caregiver Act in 2010. In fact, in a related context, Congress expressly prohibited judicial review of all decisions under the Veterans Community Care Program. 38 U.S.C. § 1703(f). There, Congress stated that "review of

*any decision* under subsection (d) or (e) shall be subject to the Department's clinical appeals process, and such decisions *may not be appealed to the Board of Veterans' Appeals.*" *Id.* (emphases added). When Congress intends to prohibit judicial review, it clearly does so. *See, e.g.*, 38 U.S.C. §§ 511(a), 7252(b) ("The Court may not review the schedule of ratings or disabilities . . . or any action of the Secretary in adopting or revising that schedule."), 7263(d) ("An order of the Court under this subsection is final and may not be reviewed in any other court.").

Congress did not express an intent to prohibit judicial review of all decisions in the plain language of § 1720G(c)(1). 38 U.S.C. § 1720G(c)(1) ("A decision by the Secretary under this section affecting the furnishing of assistance or support shall be considered a medical determination."); *see, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997) (explaining the "plainness or ambiguity of statutory language is determined by reference to the language itself"). Indeed, the statute does not directly address judicial review at all.

Though the plain language does not prohibit judicial review, the Secretary argues Congress intended for all Caregiver Program decisions to be exempt from Board review. Appellant's Opening Br. at 21–22, 36–37. The Secretary argues "medical determination" is a reference to the VA's regulation precluding Board review of medical determinations, which demonstrates Congress' intent to exclude them from Board review. *Id.* at 21–22 (citing 38 C.F.R. § 20.104(b) (1992)). We do not agree.

The Secretary's argument is based on VA regulations issued in 1983, prior to the VJRA, delineating the appellate jurisdiction of the Board. Appeals Regulations, 48 Fed. Reg. 6961, 6970 (Feb. 17, 1983) (codified at 38 C.F.R. pt. 19). The VA established that "[m]edical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an

individual, are not adjudicative matters and are beyond the Board's jurisdiction." 38 C.F.R § 19.3(b) (1983). The VA has continued to implement regulations, not challenged by either party, that establish the types of matters within the Board's jurisdiction. *See* 38 C.F.R. § 20.101(b) (1992); 38 C.F.R. § 20.104(a) (2019). When the Caregiver Act was enacted, the Board's appellate jurisdiction was defined:

> (b) Appellate jurisdiction of determinations of the Veterans Health Administration. The Board's appellate jurisdiction extends to questions of eligibility for hospitalization, outpatient treatment, and nursing home and domiciliary care; for devices such as prostheses, canes, wheelchairs, back braces, orthopedic shoes, and similar appliances; and for other benefits administered by the Veterans Health Administration. *Medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual, are not adjudicative matters and are beyond the Board's jurisdiction.* Typical examples of these issues are whether a particular drug should be prescribed, whether a specific type of physiotherapy should be ordered, and similar judgmental treatment decisions with which an attending physician may be faced.

38 C.F.R. § 20.101(b) (1992) (emphasis added).[3] The regulation was redesignated in 2019 to section 20.104(b) and

---

[3] Because the statute references a term of art in the VA regulation, the VA is bound by the language in the regulation at the time the Caregiver Act passed. *See George v. McDonough*, 596 U.S. 740, 746–47 (2022) ("Where Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." (internal quotations omitted)); *Traynor v. Turnage*, 485 U.S. 535,

retained nearly the same language.  *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 177 (2019).

We presume Congress legislates with knowledge of existing statutes and regulations.  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."); *see Traynor*, 485 U.S. at 545–46.  The Secretary argues Congress' awareness of VA's longstanding regulation points to their intention to prohibit judicial review.  Appellant's Opening Br. at 28–30.  But the Beaudettes do not argue Congress was unaware of the regulation.  Rather, the Beaudettes argue that with awareness of the regulation, Congress limited its application.  Oral Arg. at 39:00–41:42, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1264_120620 23.mp3.  We agree with both parties that the reference to "medical determination" implicates the VA regulation regarding the Board's jurisdiction.

To the extent the Secretary is suggesting that by referencing "medical determination[s]," Congress intended no judicial review of *all* Caregiver Program decisions, we do not agree.  Congress chose to limit the regulation's applicability to only decisions "affecting the furnishing of assistance or support."  38 U.S.C. § 1720G(c)(1); *see* Oral Arg. at 39:00–41:42.  We understand this language to except from Board review only decisions relating to the need for or appropriateness of specific types of medical care and treatment, which are properly considered medical determinations.  The Caregiver Act necessarily requires decisions other than medical determinations, such as whether veterans and caregivers are eligible to receive

---

545–46 (1988) (explaining that when Congress uses a term of art when enacting a statute, it intends the same term receive the same meaning for purposes of that statute).

benefits.  38 U.S.C. § 1720G(a)(2), (a)(4), (a)(5), (a)(7).  Judicial review over those decisions is not precluded.

The Secretary's argument is also inconsistent with the regulation itself.  The VA's regulation broadly defines the types of decisions that fall within the scope of the Board's review.  For example, the first sentence of 38 C.F.R. § 20.101(b) states the Board has jurisdiction over eligibility decisions of various benefits, such as outpatient treatment, domiciliary care, and "other benefits administered by the Veterans Health Administration."  38 C.F.R. § 20.101(b) (1992).[4]  Some Caregiver Program decisions are at least within the scope of "other benefits" and would fall under the Board's jurisdiction.  *See* Appellant's Opening Br. at 14 n.6.

The VA regulation excludes from Board review a narrow type of medical determination that is essential to VA's authority to prescribe specific types of medical care or treatment.  38 C.F.R. § 20.101(b) (1992) (describing medical determinations as "determinations of the need for and appropriateness of specific types of medical care and treatment for an individual").  The regulation provides examples of medical determinations, such as a type of drug that should be prescribed, type of physiotherapy that should be ordered, or any other similar "judgmental treatment decisions."  *Id.*  The language of 38 U.S.C. § 1720G(c)(1) is

---

[4]  At the panel's request, the parties submitted supplemental briefing on the meaning of "domiciliary care" within section 20.101(b).  Supplemental Brief for Appellant, Dkt. No. 77; Supplemental Brief for Appellees, Dkt. No. 76.  The parties appear to agree the term historically means providing housing to a veteran rather than providing in-home care.  Appellant's Supp. Br. at 2–3; Appellees' Supp. Br. at 3.  Because section 20.101(b) covers "other benefits," we need not address the current meaning of "domiciliary care."

consistent with the VA's regulation. Section 1720G(c)(1) does not state *all* Caregiver Program decisions are medical determinations, only decisions about the type of "assistance or support." 38 U.S.C. § 1720G(c)(1). An eligibility decision is not a judgmental treatment decision and thus not a medical determination.

Moreover, the Board has the authority to determine the types of Caregiver Program decisions that fall within its jurisdiction. 38 C.F.R. § 20.104(c) (2019) ("The Board shall decide all questions pertaining to its jurisdictional authority to review a particular case."). To comply with 38 U.S.C. § 1720G(c)(1), the Board must view all decisions about the "furnishing of assistance or support" as medical determinations and outside of its jurisdiction. 38 U.S.C. § 1720G(c)(1). An example of such a decision is whether a specific type of mental health service is appropriate, or whether the type of respite care provided for primary family caregivers is medically and age-appropriate. 38 U.S.C. § 1720G(a)(3)(A)(ii)(II), (a)(3)(A)(ii)(III), (a)(3)(B). Other decisions not related to the furnishing of assistance and support are within the Board's jurisdiction. For example, decisions about the veteran's or caregiver's eligibility, such as whether the caregiver is an appropriate family member, are within the Board's jurisdiction. *See, e.g.*, 38 U.S.C. § 1720G(d)(3).

Here, the Beaudettes were deemed ineligible partially because Mr. Beaudette was not available for an in-person evaluation. J.A. 48–49. This is a procedural issue related to Caregiver Program eligibility and is not a medical determination. The Board has the authority to review the Beaudettes' decision based on the interpretation of the statute and the VA regulation.

We conclude the Beaudettes and other similarly situated veterans and caregivers have an indisputable right to judicial review of Caregiver Program decisions that do not affect the furnishing of support or assistance. The Board

14                                BEAUDETTE v. MCDONOUGH

has the authority under 38 C.F.R. § 20.104(c) to determine the types of appeals within its jurisdiction in light of the guidance above.

## III

We next consider whether the Beaudettes had no adequate alternative means to obtain the relief requested. *Wolfe*, 28 F.4th at 1354. The Secretary argues the Beaudettes could have filed a direct appeal to this Court pursuant to 38 U.S.C. § 502. Appellant's Opening Br. at 46–48. A § 502 petition is a challenge to the VA's regulations or rulemaking under the Administrative Procedure Act. 38 U.S.C. § 502 (providing judicial review of VA's action under 5 U.S.C. §§ 552(a)(1) or 553). But the Beaudettes do not challenge the VA's regulation or rulemaking for the Caregiver Program. Rather, the Beaudettes seek judicial review of an adverse decision regarding their eligibility for the Caregiver Program. J.A. 3–4; *see also* Oral Arg. at 28:42–30:31 (Secretary agreeing the Beaudettes are not challenging a regulation or rule). While the Beaudettes' arguments challenge the VA's interpretation of a statute, they are not challenging the VA's rulemaking. Thus, the Beaudettes had no adequate alternative means to obtain the relief requested and the Veterans Court properly issued a writ of mandamus.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons given above, we affirm the Veterans Court's grant of the petition for a writ of mandamus.

## **AFFIRMED**

### COSTS

No costs.